United States District Court
Southern District of Texas
**ENTERED**
May 16, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RODOLFO GONZALEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 2:23-CV-00216 |
| § | |
| MARTIN O'MALLEY, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

*Pro se* Plaintiff Rodolfo Gonzalez brought this action on September 1, 2023 seeking review of the Commissioner's final decision determining he was not disabled. On January 8, 2024, Plaintiff filed a Brief, construed as a Motion for Summary Judgment. (D.E. 11). On February 24, 2024, Defendant filed a Response Brief, construed as a Cross Motion for Summary Judgment. (D.E. 16). For the reasons below, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

### I.   JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND

Plaintiff filed an application for Title II benefits on June 2, 2020 at age 52, alleging disability as of July 24, 2019, due to "blind or low vision; level 3 infusion in back; left leg is small and often times gives out; diabetes; high blood pressure; neuropathy; unable to bend, stoop, or lift over 5 lbs." (D.E. 7-6, Pages 2-8 and D.E. 7-7, Page 4). After Plaintiff's applications were denied initially and upon reconsideration, at Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on October 26, 2021, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (D.E. 7-3, Pages 69-121 and D.E. 7-4, Pages 2-28). The ALJ issued an unfavorable decision on December 13, 2021, finding Plaintiff not disabled. (D.E. 7-4, Pages 29-44).

On June 14, 2022, the Appeals Council remanded the case to the ALJ to consider additional medical records from Brush Country Medical, PLLC obtained after the October 26, 2021 hearing. (D.E. 7-4, Pages 50-53). On November 7, 2022, a supplemental hearing was held before the ALJ at which Plaintiff, who was represented by counsel, and Plaintiff's wife testified. (D.E. 7-3, Pages 40-68). On February 1, 2023, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (D.E. 7-3, Pages 16-32). The Appeals Council denied review on July 6, 2023, making the ALJ's February 1, 2023 decision final. (D.E. 7-3, Pages 2-4). Plaintiff then filed this action on September 1, 2023, seeking review of the Commissioner's final decision. (D.E. 1).

### III. STANDARD OF REVIEW

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted). The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's RFC, claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible

choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted). Further, as Plaintiff is proceeding *pro se* in this appeal of the ALJ's decision, the Court has additional considerations. While Courts must construe *pro se* pleadings and arguments liberally, they must also "maintain their role as neutral and unbiased arbiters" and "are not bound to 'scour the record for every conceivable error'" as the Court is not an advocate. *Deron v. Soc. Sec. Admin.*, No. 3:20-cv-506-L-BN, 2021 WL 3625081, at *2 (N.D. Tex. July 27, 2021) (citation omitted). Rather, "fundamental fairness and the interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized." *Id*. Following this approach, Courts have examined:

> 1. Whether the Commissioner's decision generally reflects the protocol established in the Social Security Act, the Commissioner's own regulations, and internal policies articulated in Social Security Rulings.
>
> 2. Whether the Commissioner's critical fact findings were made in compliance with applicable law.
>
> 3. Whether substantial evidence supports those critical findings.

*Id*. (citation omitted).

## IV.     ISSUES PRESENTED

Plaintiff does not clearly identify his issues with the ALJ's decision. Rather, throughout his 15-page brief, Plaintiff makes conclusory arguments which indicate he disagrees with the ALJ's decision. Specifically, Plaintiff argues (1) the ALJ improperly relied on the VE's testimony from the first hearing in the second opinion (D.E. 11, Pages 2 and 13-14); (2) the ALJ improperly discounted his testimony as well as his wife's testimony (D.E. 11, Pages 4, 5, 12); and (3) the ALJ failed to properly consider the medical evidence in the record, including the opinion and treatment records of both Dr. Cantu and Dr. Masciale, when rendering his decision. (D.E. 11, Pages 4, 12 and 13). Plaintiff also spends much of his brief summarizing medical records which he asserts support a finding of disability, including the opinions of his treating physicians, images of his spine from August 27, 2019, January 22, 2020 and May 25, 2021 and January 12, 2022, as well as a general list of his medications and what they are used to treat. (D.E. 11, Pages 7-11).

## V.     HEARING TESTIMONY AND THE ALJ'S DECISION

At the October 26, 2021 hearing, Plaintiff testified he dropped out of school in the tenth grade, lives with his wife and stopped work in August 2019 because of his back injury, his legs, neuropathy in his feet and diabetes. (D.E. 7-3, Pages 7-3, Pages 75-76). Plaintiff also testified that he had back surgery in 2000 and returned to work in 2003 or 2004. (D.E. 7-3, Pages 76-78). Plaintiff further testified he worked until 2019 in several positions but needed to take over the counter pain medication and had difficulty performing

his duties. (D.E. 7-3, Pages 84-90). Plaintiff testified that after he fell while he was mowing the lawn at his house and injured his back on August 27, 2019, he was unable to work because he would not be able to pass a physical because of his high blood pressure and his leg and back. (D.E. 7-3, Pages 91-94). Plaintiff testified that after an initial emergency room visit, he was continuously treated by Dr. Cantu for this ailments and prescribed pain medication. (D.E. 7-3, Page 96). Additionally, Plaintiff testified that as he was not working, he was unable to pay his child support and in 2020, he was found in contempt and was jailed for five days. (D.E. 7-3, Pages 97-99). Plaintiff testified that while he was mopping his cell, he fell and injured his back, was taken by ambulance to the hospital where they "didn't even want to see me because I was in handcuffs." He was later treated by Dr. Cantu after being released and prescribed pain medication. (D.E. 7-3, Pages 98-99).[1] Plaintiff further testified he was then later referred by Dr. Cantu to Dr. Masciale, a neurosurgeon, for treatment the next year. (D.E. 7-3, Pages 100-108). Plaintiff also testified that he was in constant pain at a seven or eight whether sitting or standing, could only drive for short periods, could do very little housework, falls three or four times a week

---

[1]Treatment records from the emergency room for this January 11, 2020 incident indicate Plaintiff tried to convince his treating physician "multiple times to try and keep him here in the hospital as he reports that they do not take care of him [in prison] and he is sleeping on the ground. His story does change from time to time and otherwise he does report that he will be out of prison in a few days as he is only in for child support." (D.E. 7-8, Page 47). Imaging of Plaintiff's lower back and sacrum/coccyx was noted as "unremarkable," and he was noted as having a normal range of motion in his extremities with no evidence of injury, tenderness or edema. (D.E. 7-8, Page 47). Plaintiff was also noted as requesting opiate pain medications and, prior to discharge, "requesting a hospital stay for the next couple days until he can get out of prison." (D.E. 7-8, Pages 47-48). It was further noted that Plaintiff "was counseled on evidence-based medicine and lack of evidence for further work-up or hospital stay…upon discharge patient was quite upset with me." (D.E. 7-8, Page 48). Plaintiff was prescribed Ibuprofen and a muscle relaxant. (D.E. 7-8, Page 48).

using whatever is close to him to get back up, uses a walking aid, could not walk a block and had difficulty sleeping. (D.E. 7-3, Pages 108-113). Upon examination by the ALJ, Plaintiff testified he unsuccessfully applied for work in 2020 and 2021 and collected unemployment during that time. (D.E. 7-3, Page 115).

The VE also testified at the hearing on October 26, 2021 and opined that a person who could lift up to ten pounds on a frequent basis and up to twenty pounds on an occasional basis; must avoid frequent climbing of stairs and ramps; could never climb ladders or scaffolds; and could occasionally stoop, kneel, crawl, crouch and bend could perform the occupations of cashier II, fast food worker and parking lot attendant, all light positions. (D.E. 7-3, Pages 117-118). The VE further testified that if the person required the use of a single cane, the position of cashier II could still be performed. (D.E. 7-3, Page 117-118). The VE also testified that if the person did not require the use of a single cane but instead required a sit/stand option, such an individual would not be able to perform these occupations but could perform the occupation of routing clerk. (D.E. 7-3, Pages 118-119).

At the supplemental hearing on November 7, 2022, Plaintiff testified he had back surgery in 2000 for a herniated disc and then returned to work several years later in either 2003 or 2004. (D.E. 7-3, Pages 76-78). Plaintiff also testified he was terminated from his last employment in August 2019 after his fall at home because he could no longer perform the work due to his back and legs. (D.E. 7-3, Pages 49 and 51-52). Plaintiff testified he is depressed and anxious because he "can't help [his] wife with money, around the house,

7 / 17

stuff like that," he can sometimes drive but his wife does not let him because his legs and feet go numb, he takes pain medication and he has fallen at home. (D.E. 7-3, Pages 56-59). Plaintiff further testified he had received back injections and took pain medication but he was still in pain and had difficulty sleeping. (D.E. 7-3, Pages 59-60 and 63). Plaintiff's wife also testified at the supplemental hearing, stating they had been married for just over seven years, Plaintiff stumbles and falls at home, his physical condition has deteriorated over the past three years, and he has difficulty sleeping. (D.E. 7-3, Pages 64-67).

The ALJ determined Plaintiff had not engaged in substantial gainful activity from July 24, 2019, the alleged onset date, through the date last insured December 31, 2021. (D.E. 7-3, Page 22). The ALJ further found Plaintiff had one severe impairment: lumbar spine disorder. (D.E. 7-3, Page 22). The ALJ found Plaintiff's hypertension and diabetes to be non-severe because "the record reveal[ed] that these conditions are generally responsive to treatment and none are documented as limiting impairments or associated with limiting end organ change," noting "these impairments, either singly or in combination, are not severe because they are no more than slight abnormalities that have no more than a minimal effect on the claimant's ability to function within the meaning of the regulations." (D.E. 7-3, Page 22).[2] The ALJ also found Plaintiff's mental impairments

---

[2] The ALJ cited to a February 5, 2019 treatment note which states Plaintiff's hypertension was slightly elevated and asymptomatic and that Plaintiff was non-compliant with treatment for both hypertension and diabetes. (D.E. 7-8, Page 10). Both his hypertension and diabetes are noted as stable. (D.E. 7-8, Page 11). The ALJ also cited to a March 15, 2018 treatment note which noted Plaintiff's diabetes, anxiety, depression, insomnia and bipolar disorder were all stable as well as a January 6, 2020 treatment note stating his hypertension and diabetes were stable and he denied having any chest pain, dizziness, dyspnea or headaches. (D.E. 7-8, Pages 191-192; 203-204 and 403-404).

of depression and anxiety to be non-severe because they did "not cause more than minimal limitation in the claimant's ability to function within the meaning of the regulations." (D.E. 7-3, Page 22).[3] The ALJ then determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, considering Listing 1.15 for disorders of the skeletal spine resulting in compromise of the nerve roots and Listing 1.16 for lumbar spinal stenosis result in compromise of the cauda equine. (D.E. 7-3, Pages 23-24). The ALJ determined, "Overall, the requirements of these listings are not met given evidence of the [Plaintiff's] intact sensation, negative straight leg raise, normal motor strength, and normal gait on multiple exams." (D.E. 7-3, Page 24 and D.E. 7-8, Pages 47 and 62-63).

After considering the entire record, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as Plaintiff could

---

[3] The ALJ cited to Plaintiff's treatment notes from March 28, 2018 and January 6, 2020 where Plaintiff's anxiety and depression are noted as stable and Plaintiff is noted as having no depressive symptoms, no changes in sleep habits and no changes in thought content. (D.E. 7-8, Pages 15 and 203-04). The ALJ further cited to Plaintiff's own reports as well as his treating physician's medical source statement where he stated he had difficulty with his memory, understanding and following instructions as well as difficulty with concentration and finishing tasks while also noting that throughout the treatment records from 2018 through 2021, Plaintiff "routinely presented with an alert demeanor, full orientation, no memory loss, and no changes in thought content." (D.E. 7-7, Page 30; D.E. 7-8, Pages 84, 148-150, 395, 398, 401, 407, 404 and 411-412). The ALJ also noted that while Plaintiff reported having difficulty getting along with family, friends and neighbors, he also acknowledged spending time with others, including family members, on a daily basis and routinely presented at his appointments with a normal mood while denying depressive symptoms. *Id*. The ALJ also noted Plaintiff reported difficulty handling changes in routine while being able to handle stress and that he also dresses and feeds himself independently, drives, goes out alone and spends time with others every day. (D.E. 7-7, Pages 29-31). The ALJ lastly noted the record did not indicate Plaintiff had any inpatient psychiatric hospitalizations or periods of decompensation. (D.E. 7-3, Page 22).

occasionally climb stairs and ramps; must avoid any climbing of ladders and scaffolds; and could perform occasional stooping, kneeling, crawling, crouching, and bending. (D.E. 7-3, Pages 24-30). The ALJ considered Plaintiff's subjective complaints, including that he had "difficulty with lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others." (D.E. 7-3, Page 25 and D.E. 7-7, Page 30). However, the ALJ also considered Plaintiff's reported daily activities, including that he "dresses and feeds himself independently, drives, goes out alone, and spends time with others every day." (D.E. 7-3, Page 25 and D.E. 7-7, Pages 26-29). The ALJ determined that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms…the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (D.E. 7-3, Page 25). The ALJ then considered all of Plaintiff's treatment records over the relevant period in detail and provided a comprehensive analysis,[4] including the opinions of both Drs. Cantu, Masciale and several

---

[4] For example, the ALJ noted that while Plaintiff sought emergency room treatment in August 2019 for back pain after he fell while mowing his lawn, Plaintiff had a normal gait, normal range of motion in his extremities and no edema with straight leg raise tenderness on the left and reduced left lower extremity motor strength to 4/5. (D.E. 7-8, Page 62). The ALJ further noted imaging from the same day that Plaintiff's lumbar spine showed surgical hardware from Plaintiff's back surgery in 2000 and only mild degenerative disc disease changes and also noted his treatment plan entailed medication management and he was discharged the same day in stable condition. (D.E. 7-8, Pages 65 and 450). The ALJ further detailed Plaintiff's ongoing treatment from Dr. Cantu throughout 2020, 2021 and 2022 as well as emergency room visits where Plaintiff's prescribed treatment was to continue his medication regimen, his back pain was noted as stable and while lower back tenderness or deficits were noted, the remainder of the findings were within normal limits. (D.E. 7-3, Pages 25-27 and D.E. 7-8, Pages 47-52, 203-204, 392 and 533).

state agency medical consultants[5] and the imaging of Plaintiff's back.[6]  (D.E. 7-3, Pages 25-30).  The ALJ determined the "medical evidence does not substantiate the [Plaintiff's] allegations of debilitating pain and other incapacitating symptoms.  Although the record does evidence some objective abnormalities throughout the course of [Plaintiff's] treatment, the [Plaintiff] also presented with otherwise preserved functioning on exams,

---

The ALJ also considered Plaintiff's single treatment by Dr. Masciale in October 2021where it was noted that Dr. Cantu had referred Plaintiff for evaluation and that Plaintiff has "hired an attorney for his disability and has brought in paperwork today to be completed." (D.E. 7-8, Page 354).  The ALJ noted Plaintiff presented with an abnormal gait, pain to palpitation in his lower lumbar spine, had 4/5 motor strength and a positive straight leg test.  (D.E. 7-3, Page 26 and D.E. 7-8, Pages 353-362).  However, the ALJ further noted Plaintiff was able to get on and off the examination table without assistance and there was no indication he required an assistive device. *Id*.  The ALJ also considered that Plaintiff reported he had been taking medication from Mexico, including Methadone and Tramadol, and that Dr. Masciale determined his office would not be able to participate in any type of medical treatment going forward.  (D.E. 7-3, Page 26 and D.E. 7-8, Page 356).

[5]Defendant thoroughly summarizes the opinions of both Plaintiff's treating physicians and the state agency medical consultants as well as the ALJ's consideration of these opinions.  (D.E. 16, Pages 16-22).  Accordingly, the undersigned need not repeat the same analysis in this M & R.  Reviewing the ALJ's decision and the record, it is clear, as argued by Defendant, that the ALJ properly discounted the opinions of Drs. Cantu and Masciale as inconsistent with the objective testing and Plaintiff's physical and psychiatric examinations throughout the relevant time period and the conservative treatment prescribed.

[6]Throughout his opinion, the ALJ considered the objective testing in the record.  Imaging from August 2019 showed only mild degenerative disc disease changes with no acute abnormalities.  (D.E. 7-8, Pages 63and 450). On January 11, 2020, imaging showed a "posterior decompression and fusion of the lower spine [with] no hardware complication apparent" as well as degenerative disc disease as L2-3 and L3-4.  (D.E. 7-8, Page 58).  On May 25, 2021, an MRI of Plaintiff's lumbar spine showed a 2 mm diffuse subligamentous disc herniation with facet arthropathy causing mild narrowing of the proximal neural foramen without impingement or canal stenosis.  (D.E. 7-8, Page 446).  Imaging from July 12, 2022 showed a posterior spinal fusion with good alignment as well as degenerative disc disease with hypertrophy of the ligamentum flavum and broad-based disc bulging at L2-3 causing the triangulation of the thecal sac and mild bilateral neuroforaminal narrowing at the L2-3.  (D.E. 7-8, Pages 477-478).

including evidence of a normal gait, normal range of motion in all extremities, normal motor/sensory function, no edema, 2+ pedal pulses bilaterally, and no neurological deficits. Therefore, Plaintiff's alleged limitations are inconsistent with the longitudinal clinical findings, his conservative care, and stable clinical presentations…[as well as] his ability to engage in ample activities of daily living." (D.E. 7-3, Pages 26-27). The ALJ also determined Plaintiff's use of a cane was not medically necessary, noting there was "no indication that the [Plaintiff] ever presented using a cane during his clinical encounters," "he presented with a normal gait and no motor or sensory deficits on exams during the relevant period at issue," and "imaging of the lumbar spine shows only mild narrowing of the proximal neural foramen without impingement or canal stenosis." (D.E. 7-3, Page 27). However, the ALJ stated he was including additional postural limitations in Plaintiff's RFC given the evidence of Plaintiff's continued objective abnormalities related to a limited range of motion and tenderness to palpation of the spine. (D.E. 7-3, Page 28). The ALJ concluded that the determined RFC was supported by Plaintiff's activities of daily living and the objective medical evidence in the record as "[t]reatment notes in the record, as well as diagnostic test results do not support the [Plaintiff's] allegations of disabling conditions. More specifically, the medical findings do not support the existence of limitations greater than the residual functional capacity established in the foregoing paragraphs. Given the limited clinical impact of the [Plaintiff's] several impairments overall, the undersigned adequately accounted for their associated functional effects by restricting him to a reduced range of light work with postural limitations as reflected in the residual functional capacity

set forth in this decision." (D.E. 7-3, Page 30).  Finding Plaintiff to be an individual closely approaching advanced age with a limited education who was unable to perform his past relevant work, and considering Plaintiff's RFC and the VE's testimony, the ALJ held Plaintiff could perform a restricted range of light work as a cashier II, fast food worker or parking lot attendant.  (D.E. 7-3, Pages 31-32).[7]  Ultimately, the ALJ concluded Plaintiff was not disabled from July 24, 2019, the alleged onset date, through December 31, 2021, the date last insured.  (D.E. 7-3, Page 32).

## VI. DISCUSSION

Here, even using a more lenient approach due to Plaintiff's *pro se* status, the undersigned recommends the Commissioner followed applicable protocol, regulations and polices; the Commissioner's fact finding complies with applicable law; and those findings are supported by substantial evidence.  While the ALJ determined Plaintiff's lumbar spine disorder was a severe impairment at Step Two, an individual claiming disability has the burden of proving disability and must prove the inability to engage in any substantial gainful activity.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (citation omitted).  "The mere presence of some impairment is not disabling per se.  Plaintiff must show that

---

[7]While Plaintiff asserts the ALJ improperly relied upon the VE's testimony in his February 1, 2023 opinion because the testimony was from the first hearing in October 2021, the ALJ correctly noted the second hearing in November 2022 was a supplemental hearing.  (D.E. 7-3, Page 42). Therefore, the ALJ properly considered the VE's testimony.  Additionally, while Plaintiff argues he was denied the opportunity to cross examine the VE, a review of the record shows Plaintiff's counsel did cross examine the VE at the October 2021 hearing.  (D.E. 7-3, Page 120).  Further, a review of the hypothetical question posed to the VE shows that accurately includes the limitations the ALJ ultimately included in Plaintiff's RFC.  (D.E. 7-3, Page 117).  Accordingly, the VE's testimony supports the ALJ's determination that Plaintiff would be able to perform other work in the national economy.

she was so functionally impaired by her [disability] that she was precluded from engaging in any substantial gainful activity." *Id*. (citations omitted); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (An "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.")

An RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) ("RFC involves both exertional and non-exertional factors.") RFC refers to the most a claimant is able to do despite physical and mental limitations. 20 C.F.R. § 404.1545(a). The ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991) ("Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment" and considerable deference is given to an ALJ's determination of that pain's disabling nature) (citations omitted). However, the ALJ is not required to incorporate limitations in the RFC that are not supported in the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence…" (citation omitted). "A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the

claimant to disability benefits." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. August 19, 2005) (It was not inconsistent for the ALJ to find Plaintiff had a severe mental impairment and also find Plaintiff could perform past relevant work). Here, the ALJ thoroughly considered the entire record prior to making the RFC assessment that Plaintiff could perform a modified range of light work.

Plaintiff's arguments for reversal "essentially asks that this Court 're-evaluate all of the evidence in [his] case and to reach a result different from the conclusion that the Commissioner reached when evaluating [his] claim.'" *Deron*, 2021 WL 3625081, at *3 (citing *Fabian v. Berryhill* 734 F. App'x 239, 244 (5th Cir. 2018) (per curiam). However, as stated previously, it is the task of the ALJ to weigh the evidence and this Court's review is limited. *Hames*, 707 F.2d at 165; *Chambliss*, 269 F.3d at 523. "It is not the place of this Court to reweigh the evidence, or try the issue de novo, or substitute its judgment…[i]f supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed." *Id*. Upon review, the ALJ's determination is based on substantial evidence. The ALJ acted within his discretion in interpreting the evidence before him. The record reflects the ALJ conducted an extensive review of the law and facts applicable to Plaintiff's disability claim during the five-step sequential evaluation process, supporting his decision with a discussion of the relevant evidence as detailed by Defendant. (D.E. 7-3, Pages 24-30). Even though the record illustrates Plaintiff suffers from a severe impairment, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not

prevent him from performing light work as identified in the RFC during the period at issue, including those positions identified by the VE.

## VII.   CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED** (D.E. 11), the Commissioner's Motion for Summary Judgment be **GRANTED** (D.E. 16) and this case be **DISMISSED**.

Respectfully submitted on May 16, 2024.

Jason B. Libby
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).